**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CR-06-118-M |
| ) | |
| JOSE ANGEL LOPEZ, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Before the Court is defendant Jose Angel Lopez's ("Lopez") First Motion to Suppress Statement, filed June 8, 2006 [docket no. 71]. On June 14, 2006, the government filed its response. On June 27, 2006, the Court conducted a hearing on Lopez's motion to suppress. At the hearing, Officer Martin Schubert, Chief of Police of the North Enid Police Department, testified.[1] Having reviewed the parties' submissions, and having heard the evidence presented, the Court makes its determination.

I.   Factual Background[2]

On April 26, 2006, at approximately 8:00 a.m., Chief Schubert saw a white van, with a California license plate, passing other vehicles in a school zone with a 25 miles per hour speed limit. He checked the van's speed with his radar, and the radar indicated that the van was traveling 30 miles per hour. Based upon its speed, Chief Schubert stopped the van.

Chief Schubert exited his vehicle, walked to the driver's window, and asked the driver, co-defendant Brandy Beverly ("Beverly"), for her driver's license and informed her why he had stopped

---

[1]The Court finds that Chief Schubert is a credible witness.

[2]This factual background is based upon the evidence presented at the hearing.

the van. Beverly told Chief Schubert that she did not have a driver's license. Beverly said that she lived in Arizona but did not have a license and told him that they were coming from Colorado to work in Oklahoma. As he was talking with Beverly, Chief Schubert saw that a Hispanic female was in the front passenger seat, Lopez was in the first bench seat behind the driver, and there were approximately 13-15 individuals in the van. Chief Schubert asked Beverly if all of the passengers were legally in the United States, and she said that they were not. Chief Schubert then asked if anyone else had a driver's license. Lopez said that he did and gave Chief Schubert a copy of a California birth certificate.

Chief Schubert then told all of the occupants of the van to wait in the vehicle, and he returned to his police car. Chief Schubert gave the dispatcher Beverly's information. The dispatcher advised Chief Schubert that Beverly did not have an Arizona driver's license. The dispatcher also advised him that the van was registered to Raul Torres from Los Angeles, California. Chief Schubert told the dispatcher to contact Immigration and Customs Enforcement ("ICE") and to have them call him. Chief Schubert then gave the dispatcher Lopez's information, and the dispatcher advised Chief Schubert that Lopez's driver's license had expired in 1998.

Chief Schubert then returned to the van and asked Beverly to step to the back of the van. He advised her that she was under arrest for driving without a license and put her in the back of his police car. Chief Schubert then asked Lopez to step out of the van, gave Lopez the copy of the birth certificate back, and advised him that his driver's license was expired and that, consequently, he could not release the van to him. Chief Schubert asked Lopez if the other passengers were illegally in the United States, and Lopez said that they were illegal. Chief Schubert then asked if any of the passengers had a driver's license, and one of the passengers produced an identification card from

Mexico. Chief Schubert asked where they were going, and Lopez said they were going from Colorado to Oklahoma City to work.

Chief Schubert received a call from ICE and returned to his vehicle. He told Lopez that he could go back to the van, and Lopez said that he would stay outside to smoke. ICE told Chief Schubert to detain the occupants of the van. Chief Schubert then contacted Deputy Hargrave, and he came to the scene and drove the van to the North Enid town hall. When they arrived at the town hall, Chief Schubert took Beverly into the town hall and had Lopez come with them. Chief Schubert told them that Beverly would be taken to jail unless bond was posted. After Lopez posted bond, Chief Schubert informed them they would be detained pending the arrival of ICE agents.

II.     Discussion

"A traffic stop is a 'seizure' within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention quite brief." *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998) (internal quotations and citation omitted). A routine traffic stop is analyzed under the principles developed for investigative detentions set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *Id.* To determine the reasonableness of an investigative detention, a court engages in a two-part inquiry: (1) whether the officer's action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Id.*

> An initial traffic stop is valid under the Fourth Amendment not only if based on an observed traffic violation, but also if the officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring. It is irrelevant that the officer may have had other subjective motives for stopping the vehicle. Our sole inquiry is whether the particular officer had reasonable suspicion that the particular motorist violated any . . . of the multitude of applicable traffic and equipment regulations of the jurisdiction.

*Id.* at 1348 (internal quotations and citations omitted).

Having heard the evidence presented, the Court finds that the initial traffic stop of the van was valid under the Fourth Amendment. Specifically, the Court finds that Chief Schubert was justified in stopping the van based upon the violation of the speed limit.

Further, a routine traffic stop "usually must last no longer than is necessary to effectuate the purpose of the stop and the scope of the detention must be carefully tailored to its underlying justification." *Id.* at 1349. An officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. *Id.* "When the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning." *United States v. Lee*, 73 F.3d 1034, 1039 (10th Cir. 1996) (internal quotations and citations omitted).

"Lengthening the detention for further questioning beyond that related to the initial stop is permissible in two circumstances. First, the officer may detain the driver for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring. Second, further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter." *Hunnicutt*, 135 F.3d at 1349 (internal citations omitted).[3]

To have "reasonable suspicion" of criminal activity, "the officer must acquire a 'particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *United States v. Villa-Chaparro*, 115 F.3d 797, 801-02 (10th Cir. 1997). An officer's "inchoate and

---

[3] Because the Court finds that Chief Schubert had an objectively reasonable and articulable suspicion illegal activity had occurred or was occurring, the Court need not address whether the initial detention became a consensual encounter.

4

unparticularized suspicion or 'hunch'" is insufficient to give rise to reasonable suspicion. *United States v. Fernandez*, 18 F.3d 874, 878 (10th Cir. 1994). To determine whether reasonable suspicion exists, a court examines the totality of the circumstances. *Id.* "Common sense and ordinary human experience are to be employed, and deference is to be accorded a law enforcement officer's ability to distinguish between innocent and suspicious actions." *United States v. Wood*, 106 F.3d 942, 946 (10th Cir. 1997) (internal citations omitted). Inconsistencies in information given to the officer during the traffic stop can give rise to reasonable suspicion of criminal activity. *Id.* at 947.

> A variety of factors may contribute to the formation of an objectively reasonable suspicion of illegal activity. Among those factors that have justified further questioning are having no proof of ownership of the vehicle, having no proof of authority to operate the vehicle, and inconsistent statements about destination. Also among those are driving with a suspended license and reluctance to stop. In particular, the inability to offer proof of ownership or authorization to operate the vehicle has figured prominently in many of our cases upholding further questioning.

*Hunnicutt*, 135 F.3d at 1349 (internal citations omitted).

Having heard the evidence presented, and based upon the totality of the circumstances, the Court finds that Chief Schubert's question whether the other occupants of the van were illegal was reasonable and not overly intrusive. Specifically, the Court finds that Chief Schubert had a reasonable and articulable suspicion that he had stopped a vehicle that was transporting illegal aliens based upon the fact that the van had a California license plate; the van was registered in California; the owner of the van was from California and was not an occupant of the van; both Beverly and Lopez stated that they had come from Colorado; Beverly had no driver's license; Lopez's driver's license was expired; no one else in the van had a driver's license, and, consequently, no one in the van was authorized to drive it, and only two occupants of the van spoke English. The Court further finds that Chief Schubert's prior experience a year before stopping a truck that was transporting

illegal aliens in the same location, as well as a much publicized stop of illegal aliens in Enid, provides further support for a reasonable suspicion of criminal activity.

Accordingly, because the Court finds that Chief Schubert had a reasonable and articulable suspicion of criminal activity, the Court finds that Chief Schubert's question whether the other occupants of the van were illegally in the United States was proper and Lopez's answer that all of the passengers were illegal should not be suppressed.

III.    Conclusion

Therefore, for the reasons set forth above, the Court DENIES Lopez's First Motion to Suppress Statement [docket no. 71].

**IT IS SO ORDERED this 28th day of June, 2006.**

*(signature)*
VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE